5-18-0415 Jeffery Grote v. The Workers' Compensation Commission Now, sir, you may proceed. Good morning, Your Honor. May it please the Court. My name is Sam Mormitto, and I represent Sergeant Jeffrey Grote, a Raina City policeman who was injured in the line of duty on April the 28th of 2011. At this time, if I could reserve three minutes for rebuttal. You'll have five minutes on the clock. Thank you. The brief does contain a recitation of the facts, and I don't think that there's much disagreement regarding those facts. But I believe it's important that we understand the timeline in this case, because Mr. Grote's story is very important. He was responding to a wellness call. An elderly woman was not responsive. He and his partner went to the ceiling in order to check on her. His partner boosted in through the dining room window, and when he came through the window, he came through on his outstretched left arm and rolled into the dining room, planting his face on the floor. Is anybody arguing that there was not an injury, an accident? That's exactly why I bring this up, Your Honor, because at the arbitration hearing, the arbitrator, and you'll see in the initial 19B hearing, the arbitrator concluded that he sustained an injury. He concluded that the symptoms that he suffered from, this upper extremity injury, were attributable to this event. And so my entire argument is based upon this issue. Was the application of the law of the case doctrine appropriate to this service? Let me see if I can clarify this a little bit. There was an arbitrator ruling in your favor on, I believe, the shoulder and other part of the body, but the arbitrator held that the condition of well-being with respect to the cervical spine was not causally related to the work accident. The commission affirmed that. Yes. That order was unappealed from us. That's correct. So doesn't that present a problem? Well, that's why we're here. The difference between or the interpretation of what constitutes condition of well-being, symptoms, disability, function, and medical pathology, diagnosis, etiology, that's at the core of this analysis. In this case, the arbitrator Simpson had before her the deposition of Dr. Chabot, the Section 12 examiner, and Dr. Gourmet, who had recommended the surgery. The primary dispute between these two positions was whether or not there was a herniated disc that was manifest on the MRI that was taken two days after the accident. And the reason I was telling you Jeff Brody's story was because initially, right after the accident, he went to seek medical treatment promptly and responsibly. His initial treatment was rendered by a chiropractor who thought that his condition was shoulder. The chiropractor had treated him in the past for a shoulder injury, and he had prior history of a left shoulder injury. And so the initial conclusion was that his radiating pain down his left arm was related to his shoulder. Responsibly, the chiropractor sends him to an upper extremity surgeon, George Paulette, who is an orthopedic surgeon who specializes in upper extremity, doesn't do spine surgery. And in June of 2011, surgery was accomplished. There was an ulnar nerve surgery, a pupil tunnel surgery, and the arthroscopic surgery of the shoulder. The interesting point is that the pathology from the arthroscopic procedure was non-contributory. It really didn't show a lot of issue. And so after the surgery was concluded, he still had the problem, radiating pain down his arm. And so Gourmet recommended the surgery. Officer Grody and Gourmet filed a 19-B petition to get approval for that surgery, and it was denied. And so what Simpson had before her was a dispute between two doctors about whether or not there was an herniated disc. I think even if you read Chabot's, the Section 12 examiner's report, he would attribute some cervical strain to this issue. I'm trying to understand exactly what you're saying. Clearly the commission and arbitrator found, and tell me if I've missed something, that the claimant had failed to establish a causal connection between the condition of the cervical spine and the work accident. They said there was no causal connection in any way relating to the spine. That decision was not appealed from. So now you're saying you get a second bite of the apple because of what? Absolutely not, Your Honor. I don't see this as a second bite of the apple. Cervical condition, not diagnosis. Here's the crux of it. What is meant by condition? And we have this problem all the time when we discuss our cases with doctors. What's the difference between medical causation and legal causation? Here's the symptom that he was before arbitrator Simpson found. Upper extremity pain, radiating pain down his arm, numbness and tingling. That's the condition of the ill being with respect to the legal issue. What does the doctor ask? What's the diagnosis of this condition? There was a dispute about that. There was no choice that we had. There was nothing in the record at the time the commission rendered its decision to take that issue up. I thought Garnett recommended it. I thought Garnett said he needed surgery. He did, but my point is that this additional evidence, once he did the surgery, established that the cause from the legal perspective, the reason why he had this condition was radiculopathy, radiculopathy from the neck. It was only determined after the surgery was completed. Let's just stop and think about the implications of that. So are you saying that in every case where there's a full and fair hearing on the issue of an injury to a part of the body, the decision is not appealed from, there's surgery later, you can reopen the case? I'm glad you asked that because obviously the implications of this hearing is something that may affect work comp cases in general. Hold on a second. Is there a difference between the commission saying, you failed to prove a compensable accident with respect to a certain condition, which is what she said, and the commission finding there is no causal connection between the accident and this condition for the purposes of law of the case and your ability to make an argument at some future date that you're able to establish a causal connection? Is there a difference? With all due respect, Your Honor, the commission in reviewing the initial arbitrator's decision affirmed it. You're not answering my question. I don't think you understand my question. I'll come around to it. The arbitrator said you did not prove a compensable accident in relation to this condition. Is there a difference for application of the law of the case when the commission says that as compared to the commission finding that there is no causal connection? Not that you failed to prove it, but that there is none. Is there a difference for application of the law of the case? Again, I'm not sure I see that there's a distinction between the two. Go ahead. Finish your argument. Well, if I may, Your Honor, perhaps the problem is this. The arbitrator didn't conclude that there was no causal link. The arbitrator at the initial 1980 hearing concluded that there was a causal link between the accident and the condition of ill-being, this upper arm, upper extremity problem. Then the commission approved it. And so the commission in this case affirmed the arbitrator's decision. Yes, but you're leaving out a fact. They did find that, but they concluded that there was no evidence to sustain the compensable injury on the cervical spine, though. See, I would be more accessible to your argument if they just left it open, but they didn't. They ruled on the cervical spine, didn't they? The arbitrator or the commissioner? It doesn't matter if the commission adopted the arbitrator. So what did the arbitrator say? This gets to the point that I think I'm trying to make, maybe not making it very articulate. The facts that were before the commission, the initial commission decision on the basis of the 19-B, didn't contain the subsequent facts, the result of the surgery, the fact that it was determined subsequently, without contravention, that the genesis of this was the cervical. Okay, well, he had the surgery after, I mean, actually, the commission decision came out. I'm trying to think of the time frame. He went ahead and had the surgery. He had the surgery October of 12. Right, and the decision came out. No, the 19-B decision came out November the 7th of 12. Right, right. And then the commission decision was affirmed, the commission affirmed the 19-B on July the 5th of 13. So by the time the commission had it, the surgery was completed. But by the time the appeal was filed, there was nothing in the record that would establish the facts uncovered following surgery. And that's where I get whipsawed. So had I appealed the commission decision of July 5th of 2013, what would be the facts in the record? It clearly would be a manifest way of the evidence case, and I'd lose that. So is this a case of first impression? Have you unearthed any other cases that would support your position? I don't believe it's a case of first impression in the sense that you've been asked and the commission has been asked in the past to determine whether additional evidence can be considered at subsequent hearing. But this is a unique case. It's unique because he was initially treated for an arm injury. His symptoms were an arm injury. He got surgery on two different parts of the arm. And it was determined by the doctors, based upon a subsequent surgery, that there probably wasn't a total picture. The total picture is arm problems, the functional disability. The reason he couldn't work was because of his neck. And all I'm asking is not a broad application or an abolition of the law of the case doctrine. I'm not asking that at all. But in this case, when arbitrator Melinda Rose Sullivan got the case on a nature and extent question in September, and she rendered her decision September the 30th of 16, I'm sorry, that was when the trial was, she took in all the evidence. I submitted the second deposition of Gornett, Evanson, and Poletta. All of them said the same thing, that this was the progression of things. We looked at the shoulder, it didn't work out, that wasn't the cause. Went to the neck, it was the cause. When she was presented with that fact, she disregarded it using the law of the case. All I'm saying is it should have been regarded. That's it. Well, how would you respond to this argument? For purposes of stability in the law, who has the obligation for establishing this initially? And where do you draw the line of when it's uncovered down the road? At the 8A hearing, that's where you draw the line. If a 19B is followed by an 8A hearing, why not allow us to present additional medical evidence if it's relevant to the case? If you had two 19B hearings, like in one of the cases cited on one day and then on a subsequent, arguing the same issue, perfectly understandable. But was 19B ever intended to be a final adjudication on the merits? By its own terms, you're supposed to consider it doesn't preclude additional evidence at the 8A hearing. That's all I'm saying. 19B has a purpose. Initially, it went against us. But at the 8A hearing, why wouldn't I be allowed to present additional medical evidence on the pathological reason for this guy's symptoms? The reason he can't work is because of his arm, not because he had a herniated disc. I mean, I may have a herniated disc, but I'm functioning fine. So the point is, I think we can bog down, and I believe that there was a, in this particular case, there was a mixing of terms that maybe led to the discussion that I believe that you were referring to, Justice Hoffman. The difference between medical causation and legal causation. Symptoms versus pathology. All we're asking in this case is very simple. Don't abrogate the law of the case doctrine. Just allow us to present this evidence on this gentleman's injury. And that's it. Thank you. Okay, thank you, Counselor. We have five minutes in reply. Counselor, you may respond. Thank you, Your Honor. May it please the Court. My name is Jim Keith. I represent the city of Grand City. Mr. Marlino. Page 8 of my brief where I start my argument, I think it well summarizes my position. The statute is very clear. There are two situations where the commission can consider additional evidence. One, if there's a clerical error under Section 19F within 15 days of a commission decision. Or under Section 19H, if there's been a material change in disability. That didn't apply here. The original 19B decision, and as you pointed out when you were asking Mr. Marlino questions, the conclusion of the petitioner is not established by the proponents of evidence that the current condition of Bill Bean with respect to his cervical spine is causally connected to the injury of April 28, 2011. That is a final decision on causation 20 days after July 5, 2013, when the commission made its decision. What did the commission decide? Did they decide that there was no causal connection? Or did they merely decide that he failed to prove there was a causal connection? He has not established that there's a causal connection. I'll read it to you. The petitioner did not prove a compensable accident with respect to the current condition of his cervical spine. Therefore, no benefits will be awarded. That's what they found. And if there's no question that if it was found in the original arbitration adopted by the commission, that there was no causal connection, that's going to be a lot of the case. He's never going to get a chance to change that. He had his chance, he lost it, it didn't appeal. But if the finding of the commission is at the 19B hearing, you failed to prove the causal connection, does that foreclose him from coming back at a subsequent hearing, an AA hearing or subsequent 19B hearing, and establishing a causal connection? And if not, why not? Well, to your first question, I think the commission did conclude that the current condition of the cervical spine was not causally connected. Read it to me. Where do you find that? The petitioner has not established by preponderance of the evidence that the current condition of ill-being with respect to… Failure to establish is different than it was not. You get the was not, you get Dr. A saying there is a causal connection and Dr. B saying there is no causal connection, and the commission sides with Dr. B and finds there is no causal connection. That's different than saying you didn't prove it. So what was, let's cut to the chase here, so before the arbitration at this particular time, the first arbitration, what was there to, what was the evidence there that it was or was not? Correct, and that's what I was going to try and get to. What Dr. Chabot said, number one, I disagree with the diagnosis of the disc herniation, number one, and I also disagree that the current condition is causally connected. Dr. Bourdette said no, I believe there's a disc herniation, I believe it explains the symptoms down this gentleman's arm, and the arbitrator agreed with Dr. Chabot. The arbitrator, let me read it to you again. The petitioner did not prove a compensable accident. I'm reading from the last four lines of the arbitrator's decision above her signature. Here, the arbitrator did not say it didn't happen. The arbitrator said they did not prove it, and my question is, in the application of a law of the case, there's no question if this commission had the arbitrator found that it didn't happen, it'd be law of the case, they can't relitigate it, but if the only thing they said was you didn't prove it, do they have a right to attempt to prove it at a subsequent 19B or subsequent 8A? That's my only question. I don't believe they have an opportunity to prove it, because there has been a finding. He was asking for a specific procedure and surgery, and the commission said very specifically, you don't get that surgery, and he went on to falsely have it, so they're trying to claim it again. So I do believe the law of the case applies. So is it your position that even though, and I think Mr. Suffolk is probably correct, he didn't prove that President May specifically found it, though, the issue was litigated, however, this very issue was litigated. The exact factual and legal issue was litigated. And ruled that. Yes, the issue of causation was in dispute. The issue of prospective medical was in dispute. Those legal issues were in dispute. So does that make a difference? Whether it's proved or not or litigated or specifically ruled that, the issue was litigated, correct? Does anybody dispute that? No, I don't think anybody disputes that. Well, it comes down to a semantic thing that we're getting into here. Is proof the same as making a finding of fact? Failure to prove isn't the same as making a finding of fact. That's what we're talking about. I think it is when you read the whole conclusion together where the commission adopting the decision of the arbitrator relies on insight specifically to finding Dr. Chabot's opinion more persuasive than the opinion of Dr. Millan. The law of the case is really based on a simple concept, a finality. Right. Okay? I mean, there's no mystery, legal mumbo-jumbo. It comes down to that. Sometimes things have to end. Correct. Okay. And I guess the only thing I would think about is, and you kind of asked this question as to the implication, is, hypothetically, say I lost on an ITV, and it was found that you proved the condition was forth-related and had the surgery and had an absolutely terrible result. Things didn't work out, and they said, Oh, Chabot was right. I mean, would they be saying, Oh, you've got to pay back the money that you guys paid for the surgery because it wasn't right? I mean, that's essentially what he's arguing. Well, that's why I asked him about the implications here because they could be potentially far-reaching depending on how broadly you interpret this. But back to Justice Hoffman's specific question is, if failure to prove is not the same as tribunal-making and finding a fact on this issue, is there an opportunity within the Code, and if so, where, opposing counsel saying, Well, 8A, it should be allowed because it just, you know, it's an appropriate place to bring up this issue again because it was not made on a finding, or, I mean, there wasn't a finding of fact. Is there any opportunity to bring this medical pathology issue to the condition of his right arm that was found to be a workplace injury after the 19B? Well, there was found to be a workplace accident. I don't think that there was a finding of that. The finding was just the opposite with respect to... Do you understand the question? I think I do understand the question, but I don't think there's any provision in the statute. I don't think 8A allows you once... There's a specific issue in dispute. The issue was, and it's delineated on the stiff sheet, responded to disputes that the current condition of the cervical spine, which had been diagnosed... We know what it says, and the commission could have found there is no causal connection between the accident and this condition. That's not what they found. They found... They had three choices, I suppose. They could have found the causal connection, they could find no causal connection, or they could do what they did in this case and say, you failed to prove it, and therefore we're not giving the benefits. Now, does the failure to prove it carry with it a finding that can support law of the case? And if it does, why? And if it doesn't, why not? I believe when they say... Semantics consult. Well, all of it is, I mean, in other languages. I understand. In the case that was cited, I think in both of our briefs, was the wider case. And in that case, there was an award to find the current condition of the shoulder at the time of the hearing was related to the accident. And there was an appeal. And that appeal was affirmed and adopted, and it was specifically remanded by the commission to take additional evidence and do an MRI of the shoulder. There was a finding, a new MRI taken on remand. There was now a new diagnosis. Whole new diagnosis. New factual finding. There's a diagnosis of tear. The employer got a new IME and said, well, I don't believe that that new diagnosis is medically causally related to the accident, and we had a new 19B hearing. At that time, the commission determined, I agree with the employer, it's not work-related. Ultimately, the court went on to affirm that commission decision. So in this particular situation, it's almost analogous, because there was a specific diagnosis. There was medical evidence of that diagnosis put forth by the petitioner. Well, couldn't the commission, if you say that's true, couldn't the commission have merely found there is no causal connection? And they could have done that, based on it, but they didn't do it. They just said, petitioner did not prove, which is different than saying it didn't happen. I know, and that's the part I'm struggling with, is I don't see the difference. If you didn't prove it, then it doesn't exist. No, that's not true. That's not true. The fact that you didn't prove it doesn't mean it didn't happen. To Justice Holder's question, is there any potential avenue for recovery here for the claim? Under 8A, if you can prove a change in condition, wouldn't that open the door? Notwithstanding the law of the case, right? A change in the condition for what initially existed at the time of the first 19B hearing, is what you're saying. Right. I mean, could he slip in under that umbrella, so to speak? Well, Section 19H does permit it if there is a change in disability. Right. So the question is, for example, the elbows, certainly that was, I think they found there was a condition, or the condition was causally connected. And so, yeah, if there was a foresteen of that condition, they could file it under 8A. But there was no change in the condition after the original 19B hearing. We're talking about the exact same thing. So in that situation, I don't think it would be appropriate. So, really, to make it simple, as you're saying at the 19B, the arbitrator said your condition of ill-being was to the shoulder and arm, was taught... Never stipulated. Well, yeah, let's forget that. I don't care whether it's stipulated. We're talking about findings here, okay? The findings were that the condition of ill-being that was experienced by this gentleman to the shoulder and to the elbow, okay, are related to a workplace injury, correct? Correct. Okay. They were given an opportunity to consider the cervical spine, correct? Correct. Okay. And what was... And the evidence of... Was there a complaint about the cervical spine presented by the claimant, to your best recollection? So it was kind of interesting. There was an MRI performed of the neck. The primary complaint was really the posterior shoulder, which Dr. Bournette had testified before the 19B hearing that he thought was related to the neck. So that was part of the dispute, was that there was not a true neck complaint, which is what Dr. Chabot relied upon. Okay. But there was a cervical spine MRI based upon a complaint of the shoulder and elbow? That is correct. Why would they do that, medically? Chiropractor Evenson, I believe, did it to try and rule out whether it was shoulder, neck, elbow. And that's what all the evidence was presented at the issue. And the chiropractor did the MRI? He ordered the MRI, that is correct. Okay, well, he ordered it. Did it. Had it. And he concluded, as a result of the MRI results, that the chiropractor concluded that it was the genesis of his complaints and condition were shoulder and elbow injury. Correct. And treated, therefore, afterwards for those two specific parts of the body. Correct. And which was necessitated the referral to Dr. Filetta, who is the elbow and shoulder specialist. And the Chabot was your IME, which basically agreed, after reviewing the MRI that was reviewed by the chiropractor, agreed that cervical, whatever was on that MRI, did not create the condition of the ill being to the shoulder and elbow. Yeah, did not create A and B, was anyway unrelated to the event. So, I guess, the issue of medical necessity for neck surgery and causal connection for both. And I guess, to that point, I'm sorry, I'm reading the original order. Specifically, they denied the request to have the cervical. Correct. So, I mean, that specific issue of prospective medical... So, there was implicitly a finding that the cervical spine, surgery to the cervical spine is not related to a workplace accident. Correct. Because they asked for approval of it and it was denied. And they went on to have the exact... So, they found no connection to the condition of the cervical spine to a workplace accident. The need for the surgery, correct. I mean, the specific finding with respect to prospective medical... Well, you don't get surgery approved unless you find a connection. Well, yeah, there has to be a causal connection. Right. That is correct. Okay. So, you're saying that that was, in essence, a finding that will support a law of the case barrier to the introduction of subsequent evidence about Garnett's surgery on this gentleman. Correct. Because it's the exact same surgery that he asked to have approved Okay. before and after, or paid for after, like I said. Okay. Your time is up. Thank you. Thank you. The cloud has lifted. I'm somewhat humbled by... I'm not following your line of questioning before, Justice Hoffman, but I believe I have a better understanding now of what you were driving at. He was trying to throw you a softball. Yeah. Whether that's the case or not, the failure to prove versus a finding of causation does meld with my argument that this is the result of a 19B hearing. The proofs that I had available at the time were one thing. And at the 8A hearing that was subsequently conducted, we established additional proofs that shed light on the condition. The condition... I mean, does Sergeant Brody have a cervical region? According to doctors, he does. But does Sergeant Brody have a neck? Does he have a leg root or a rotator cuff? Well, no. He's got a shoulder. Does he have a cubital tunnel? He's got an elbow. His problem was he had a nonfunctioning left arm, painful left arm, that was subsequently uncovered through this series of treatments and diagnostic work. So let's assume you're absolutely correct, and it was uncovered later, and let's assume everything you considered, all the questions that were asked. Nevertheless, the issue of whether the cervical spine condition of ill-being was related to the accident was litigated, was it not? Here's where I think that I differ. The condition of ill-being is the effect, the disability, the functionality of his left arm. Where is it said that the condition of ill-being is equivalent to a cervical region? It's the function of the body. Wait a minute. Go slow. We live in a world of semantics. Let's look at what was said. Under is the petitioner entitled to prospective medical care, what's written is the petitioner has not proven by a preponderance of evidence that the complaints that he now has with respect to his cervical spine are causally connected to the injury of April 28th. Now, we know something as a matter of fact. Before you can collect for medical, you have to prove a causal connection. If you can't prove a causal connection, you don't get the medical. That doesn't mean there was no causal connection, it merely means you didn't prove it. So you didn't prove it, you don't get it. And that's what was said in the original decision. And I'm back to my question. If you didn't prove it as opposed to it isn't, do you get a second bite of the apple? Or is it foreclosed by law that takes? And if it's foreclosed by law that takes, why? Or why not? It's a 19B hearing. It's a hearing that's based upon the evidence we had before us. We were looking to get prospective treatment done on this condition. And that's all the evidence we had at the 19B hearing. And, yes, if that's the decision of the arbitrator that we failed to meet our burden to prove the necessity of the surgery, then so be it. Yeah, but you're running headlong into something that 19B says. And it's worded in an interesting fashion. When speaking about the award in 19B, it says, the award should be reviewable and enforceable in the same manner as other awards and in no instance be a bar to a further hearing and determination of a further amount of temporary total compensation or of compensation for permanent disability, but shall be conclusive as to all other questions, comma, except nature and extent of the disability. That's it. Nature and extent of the disability. That's what I'm trying to say. That this question, the additional proof, has to do with the nature and extent of the injury. 8A is for that. The nature and extent of his injury is a symptom of left arm problems. The nature and extent is it's related to a cervical ridiculopathy. That's it. But the first 19B hearing made a determination of the nature of the injury, and they said the nature of the injury was injury to the shoulder and elbow. They didn't say the nature of the injury was related to the cervical spine. Well, I don't know that the arbitrator specifically said that the surgeries that Dr. Coletta performed on the shoulder and on the elbow were causally linked. The condition of ill-being of the arm was found to be established. That's what I'm saying, that this isn't a law of the case case. The condition of ill-being is his injury to his arm. The nature and extent was elaborated upon by the subsequent medical evidence following surgery. We looked inside and saw the pathology. He operated, and the guy was fixed. All after the 19B hearing. That's really it. Thank you. Okay. Thank you, Counsel Ball. Very interesting questions, issues. Thank you for your arguments in this matter this morning. We will be taking under advisement a written disposition shall issue.